LA VASQUE *v.* BEESON.

Opinion delivered April 28, 1924.

1. LANDLORD AND TENANT—DELAY IN ASSERTING FRAUD.—Where the lessee of a newspaper plant was induced to enter into a lease by the lessor's fraudulent representations that he could earn $250 per month, and, immediately after taking possession, learned that such representations were false, an unreasonable delay of one year without asserting fraud and repudiating the lease constituted a waiver of the fraud.

2. FRAUD—UNREASONABLE DELAY IN REPUDIATING CONTRACT.—While it is generally a question of fact whether a given time is unreasonable, a delay of one year in repudiating a contract on the ground of fraud is unreasonable.

3. LANDLORD AND TENANT—BREACH OF CONTRACT—Where the lessee of a printing plant, leased for such time as the lessor should be in the military service, abandoned the plant before that time, it was not error to instruct as matter of law that the lessee was liable for breach of contract.

4. LANDLORD AND TENANT—BREACH OF CONTRACT—LIABILITY.— Where the lessee of a newspaper plant leased for the period of the lessor's military service, abandoned the plant before that time, he will be liable for the monthly rent of the plant

from the time of such abandonment until the discharge of the lessor from the military service.

5. LANDLORD AND TENANT—BREACH OF LEASE—DAMAGES.—On a breach of his contract by a lessee of a printing plant, the lessor was entitled to recover the difference in value of a going business at the time the lessee breached the lease and its value at the time the lease was to expire, the loss to the plant from deterioration from not having been operated, and sums paid for storage from date of breach to the periods of expiration of the lease.

6. LANDLORD AND TENANT — BREACH OF LEASE — DUTY TO MINIMIZE DAMAGES.—On breach by the lessee of a lease of a printing plant for a definite period, it was the duty of the lessor, after knowledge of such breach, to use reasonable efforts to minimize the damages sustained, and his failure so to do was for the jury's consideration in assessing the damages.

Appeal from Ashley Circuit Court; *Turner Butler,* Judge; affirmed.

*G. P. George* and *Gordon & Combs,* for appellant.

*Compere & Compere* and *Strait & Strait,* for appellees.

WOOD, J. This is an action by the appellees against the appellants to recover damages for an alleged breach of contract. This is the second appeal in the case. *Beeson* v. *LaVasque,* 144 Ark. 522.

The appellee, V. A. Beeson, alleged that he was the owner of a newspaper plant known as the "Morrilton Headlight," in the town of Morrilton, Conway County, Arkansas; that on June 30, 1917, he entered into a written contract with Arthur W. LaVasque by which he leased to LaVasque the newspaper plant; that LaVasque agreed to operate said plant for the period that Beeson was absent in the military service of the United States in the war with Germany, and until his discharge from said service, for a period not less than one year from July 1, 1917, for the consideration of $60 per month, payable on the first of each month during the life of the contract; that A. R. Bradley signed the said contract as surety and guarantor of LaVasque for the performance thereof; that appellant LaVasque abandoned and closed up the plant about July 1, 1918, and thus violated his

contract, and, by reason of such violation, the plant, machinery and fixtures deteriorated and became practically worthless, the business totally destroyed, to the plaintiffs' damage in the sum of $3,000; that, in addition to this damage, LaVasque and Bradley, his guarantor, were indebted to the plaintiffs for rent of the plant at the rate of $60 per month for 13½ months, and for rent of the building in which the plant was located at the rate of $25 per month for such time, making a total sum due the plaintiffs of $4,147.50, for which they prayed judgment.

There was a demurrer to the complaint on the ground that the lease was void for uncertainty of the length of time of its duration; and also that, as to Bradley, it could not be enforced because he was not notified of the acceptance of his guaranty by Beeson, and that there was no consideration for it. The trial court sustained the demurrer and dismissed the complaint, and, on the former appeal, we held that the court erred on both grounds, and remanded the cause, with directions to overrule the demurrer. When the cause reached the circuit court on remand, the defendants filed an answer in which, after denying the allegations of the complaint, they set up that they were induced to enter into the contract with the plaintiffs because of the false and fraudulent representation of Beeson to the effect that he knew that if LaVasque would lease said printing plant he could make, over and above his expenses of operating and rents upon same, an income of at least $250 per month; that Beeson knew these representations to be false, and made them for the purpose of inducing the defendants to enter into the contract; that defendants relied upon said representations. The defendants further set up that, at the time the parties entered into the contract, it was not intended that same should be in force for a longer period than one year: that LaVasque fulfilled his contract to the letter during the period of one year, as stipulated, and duly notified plaintiffs that he would not operate the same for a

longer period than one year, and, in pursuance of such notice, on the 30th of June, 1918, he delivered possession of the plant and premises to plaintiffs' agent and attorney, W. P. Strait, by surrendering to him the key; that plaintiffs thereupon took possession of the plant, and, after the publication of the paper for a time, they suspended its publication, and then again resumed it on the first of September, 1918, and continued thereafter to operate the plant, except for a period of about a month and a half, until the first of the year 1919, when the plaintiffs sold the plant.

Testimony was adduced by the respective parties to sustain the allegations of their pleadings. At the conclusion of the testimony the court instructed the jury as follows: "1. You are instructed that, under the testimony in this case, the court holds as a matter of law the defendants are liable, and you are directed to return a verdict for the plaintiffs for the amount of the unpaid rent at $60 per month from July 1, 1918, to August 19, 1919, with interest thereon at the rate of six per cent. per annum from the date of the maturity thereof up to this date, and for such other and further damages, if any, which you may find plaintiffs sustained as a direct and proximate result of defendants' breach of the contract.

"2. You are instructed that, on the question of damages in addition to the rents as mentioned above, plaintiffs would be entitled to recover the difference, if any, in the value of a going business at the time defendant breached the contract and the condition found and existing at the time Beeson was discharged from the military service, and such further loss as may have been caused by reason of deterioration of the property caused by same not having been operated, and such sums as plaintiffs may have paid for storage of the plant from the date of the breach of contract to the date of Beeson's discharge from the military service of the United States.

"3. The court further instructs the jury that it was the duty of the plaintiffs, when they learned that the contract had been breached, to use all reasonable efforts to

minimize the damage which they may have sustained, and, if they failed to do so, the jury should take that into consideration in assessing the amount of damages sustained by the plaintiffs on account of said breach of contract."

The jury returned a verdict in favor of the plaintiffs in the sum of $1,280. Judgment was entered in their favor for that sum, with interest from the date of the judgment, from which is this appeal.

1. The appellants contend that there was testimony tending to prove that they were induced to enter into the contract by reason of fraudulent representations on the part of Beeson to the effect that LaVasque, if he leased the plant, could make from $150 to $300 per month net, and that therefore the court erred in not submitting the issue of fraud to the jury. We find it unnecessary to set out and discuss the testimony on the issue of fraud, for, if it be conceded that there was testimony which would have warranted the submission of this issue to the jury, the undisputed testimony proves that LaVasque waived the fraud, if there was fraud, and the right to forfeit the contract because of such fraud, by reason of his unreasonable delay in not asserting the alleged fraud and repudiating the contract on that account.

LaVasque testified that he assumed possession of the plant July 1, 1917. He learned immediately that the representations of Beeson were false. He learned this from the job-books turned over to him by Beeson. The amount of net profit would be $30.10 for April, 1917, and the profit was less for March than April. He operated the plant for one year under the lease. On June 8, 1918, he wrote to Beeson stating: "As my lease contract with you and Mrs. C. L. Beeson expires (as far as time is specified) on July 1, 1918, and as further time after that date is indefinite and subject to termination by either party, I hereby notify you and Mrs. C. L. Beeson, as parties of the first part, that I wish the lease contract on the Morrilton Headlight terminated at the specified time, July 1, 1918." He consulted with counsel, showing

him the lease contract, and was informed by his counsel that the contract was no good for more than a year, and wrote Beeson to that effect. That was not all the reason he had for quitting, but that was the only reason he gave Beeson. He never did mention to the Beesons that they had made misrepresentations to him.

It thus appears from LaVasque's own testimony that he took possession of the plant under the lease contract July 1, 1917, and he immediately discovered that a fraud had been perpetrated upon him, yet he continued to hold and operate the plant for an entire year before repudiating the contract, and even then he did not tell the Beesons that he was ignoring the contract on account of the fraud he had discovered, but notified them that he was surrendering it because he had been advised by his counsel that the contract was no good for more than a year, and therefore that the same would expire July 1, 1918. Under the above testimony the appellants are estopped from setting up a forfeiture of the contract on the ground of deceit and fraud. They could not operate the plant a whole year under a contract which they knew to be fraudulent and then set up such fraud in defense of an action by the other party seeking to enforce the contract.

In *New York Life Ins. Co.* v. *Adams*, 151 Ark. 123, this court announced the following principle which is applicable here: "It is generally a question of fact for the determination of the jury whether or not a given time is unreasonable, but the circumstances may be such that the court should declare as a matter of law whether the delay is or is not unreasonable." Here the court was justified in declaring as a matter of law that the defense of fraud could not avail the appellants. After discovering the alleged fraud, they had no right to hold appellees' property and speculate on same to determine whether it would be a profitable venture. If they intended to declare a forfeiture because of fraud, they should have taken such action within a reasonable time after discovering the fraud. The facts of this record do not bring it within the

doctrine of *Matlock* v. *Reppy,* 47 Ark. 148, where we held that false representations in the sale of lands are in the nature of warranties, and must be made good.  Here the transaction was an executory contract for the leasing of a printing establishment; and, after appellees had performed their part of the contract by delivering the possession thereof to the appellants, and the appellants had entered upon the performance of the contract and retained the possession of the plant for a year, appellants then seek to avoid the contract for fraud.  This cannot be done.  The facts bring the case within the doctrine announced in *McDonough* v. *Williams,* 77 Ark. 261; *Remmel* v. *Griffin,* 81 Ark. 269; *Josephs* v. *Baker,* 95 Ark. 150-154; *Webster* v. *Carter,* 99 Ark. 458-461.

2.  The appellants next contend that, on the evening of June 30, 1918, LaVasque surrendered the possession of the printing plant and premises by delivering the key thereof to W. P. Strait, the agent and attorney of the appellees, and who, for the appellees, took possession of the plant, and thereafter for a time operated the same. But the undisputed testimony shows that, before the key to the plant was delivered to Strait, LaVasque had determined to abandon the lease.  LaVasque himself testified that, before he delivered the key to Strait, he had informed Strait positively that he was going to close the plant on July 1, 1918; that Strait at that time, in Beeson's behalf, endeavored to get him to go ahead with the operation of the plant, and that he refused.  LaVasque stated that Strait called his attention to the fact that Beeson had received his (LaVasque's) letter stating that he was going to quit July 1, 1918, and Strait informed him that Beeson intended to insist on the contract; that, notwithstanding this fact, when July 1 came, he quit; that, at the time he locked up the plant and quit, he took the keys to the office of Strait & Strait, and told Strait that he was going to send the keys to Beeson, and Strait said, "You can leave them with me."

Strait testified concerning this, that he received a letter from Beeson in June, 1918, stating that LaVasque

was breaking his contract, and requesting witness to do what he could to keep him from throwing up his contract and quitting; that he called on LaVasque and urged him to stay in business, and LaVasque said that he had consulted counsel and had the contract examined, and that it expired on July 1, 1918, and that he had given Beeson notice. Thereupon witness returned to his office and wrote LaVasque a letter, and also wrote a letter to Bradley, in which he called attention to the fact that the Beesons flatly refused to release them from the contract, and, if they failed to keep the premises and carry out the contract, the Beesons would hold them liable in damages. In this letter Strait specified the elements of damages which the Beesons would insist on if LaVasque failed to carry out his contract, and notified Bradley that he would be held responsible as surety for LaVasque for such damages as might accrue to the Beesons if LaVasque surrendered the lease on July 1, 1918, as he had declared he would do. Strait also testified that he had no authority to accept the surrender of the lease from LaVasque.

This undisputed testimony shows that LaVasque violated his contract by abandonment of the lease on July 1, 1918, and it further shows there was no acceptance of the surrender on the part of the appellees. The trial court therefore did not err in instructing the jury as a matter of law that the appellants were liable to the appellees in damages for the violation of the contract by LaVasque.

LaVasque testified that, if he had stayed on, he would have owed the appellees $60 a month from July 1, 1918, when he closed, until he was discharged from the army, August 19, 1919. The court therefore correctly instructed the jury to return a verdict in favor of the appellees for the unpaid rent at $60 per month from July 1, 1918, to August 19, 1919, with interest at the rate of six per cent. per annum from date of maturity to date.

The court did not err in declaring the law as set forth in its instructions Nos. 2 and 3. These instructions submitted to the jury the proper elements for their con-

sideration in determining the amount of damages, if any, which had accrued to the appellees because of the violation of the contract on the part of LaVasque. It was proper for the court to tell the jury that it was the duty of the appellees, after they learned that the appellants had violated their contract, to use all reasonable efforts to minimize the damage, and, if they failed to do so, the jury would take that into consideration in assessing the amount of damages sustained by the appellees. It could serve no useful purpose to discuss the testimony relating to the measure of damages. Suffice it to say it was purely an issue of fact for the jury, and there was substantial testimony to sustain the verdict.

The record, upon the whole, presents no reversible error in the rulings of the trial court, and the judgment is therefore affirmed.