BASTON *v.* DAVIS.

5-1666                                          318 S. W. 2d 837

Opinion delivered November 17, 1958.

[Rehearing denied January 12, 1959]

*Bernard Whetstone* and *Joe B. Hurley,* for appellant.

*J. Hugh Wharton,* for appellee.

J. SEABORN HOLT, Associate Justice.   There is involved here an alleged breach of a lease of real property for a filling station and parking lot in El Dorado, Arkansas.   On April 11, 1953, the Rileys, owners of the property, entered into a written lease agreement with appellees here, the Davises (hereinafter referred to as Davis).   This lease was to run for a term of ten years at a monthly rental of $300, with an option of renewal for another ten year period.   The lease further provided:   "Sec. 5.   Lessees shall have the right to sublet any part or all of the premises, and shall have the right to assign this lease.   .   .   .   Sec. 7.   This agreement shall extend to and be binding upon the heirs, administrators, executors and assigns of all the parties."   On May 21, 1955, Davis sold a bulk sales (oil and gas) business to appellant, Baston, and on that same date Baston took possession, including possession of the lease property here, under an assignment by Davis of the above lease of the Rileys to Davis, and Davis quit paying the rental.

This assignment was as follows: "For value received we hereby sell, transfer and assign the within lease and all rights and privileges thereunto belonging, to Lloyd C. Baston, dba Baston Oil Company, El Dorado, Arkansas, this May 21, 1955.

> Eldon A. Davis
> Toyee G. Davis
> dba Davis Oil Company

Witness: Douglas A. Ward"

It was stipulated that Davis paid the rental until June 1, 1955, and Baston paid it from June 1, 1955 until December 20, 1956, when he abandoned the property after having paid for the time he had occupied it.

By another agreement made on May 29, 1957, between the Rileys and Davis, Davis admitted liability to the Rileys, the original lessors, and permitted the Rileys to re-lease the property in an effort to minimize the damages. The Rileys did re-lease one part of the property to a grocery company for $150 per month, and another part to Mr. Sanders for $100 per month, for terms of 4½ years under each lease, with each lease expiring at the same time. These leases were to extend to within 21 months of the expiration date of the original ten year Riley-Davis lease.

The present suit was filed by the Rileys against Davis only. This complaint alleged, in effect, the execution of the original lease between the Rileys and Davis, its assignment by Davis to Baston, that Baston defaulted after paying the rental for 18 months, alleged execution of the two above leases to minimize damages, and (appellant's abstract) "that on May 21, 1955, Davis sold and assigned said lease and all rights and privileges thereto to one Lloyd C. Baston, d/b/a Baston Oil Company, and that Baston entered upon and took possession of said property and began paying the rental to the plaintiffs and accepting the benefits and privileges of said lease and became in privity of estate with plaintiffs under said lease; that the lease provided the right to assign or sublet all or any part thereof; that in ac-

cepting said assignment and the benefits and privileges, Baston assumed all the responsibilities to the plaintiffs; that shortly after the execution of the lease between Riley and Davis, Eldon A. Davis sold and assigned to Toyee G. Davis all his right, title and interest in Davis Brothers Oil Company, including the said lease, and said Toyee G. Davis assumed all liability of said company; Baston is a necessary party to this suit in order that a complete determination of the issues herein may be had; prays that Baston be made a party.'' Davis answered with a general denial of all matters not admitted and further alleged ''that the deficit during the period of these two leases above would be $2,800 and that after the expiration of these two leases that there would be 21½ months remaining to the end of the original lease to the defendants, during which liability would accrue in the sum of $6,450; Rileys prayed to have judgment in the amount of $10,550,'' and in a cross-complaint prayed that should, he, Davis, be found liable for any amount that he recover from Baston an identical amount. Baston answered with a general denial of any liability and specifically pleaded the statute of frauds as a defense.

The cause was brought to trial, and at the close of all of the evidence the court directed a verdict in favor of the Rileys against Davis for $5,175 and a judgment for Davis against Baston for this same amount. The judgment contains this recital: ''After the plaintiffs and the defendants had concluded their evidence, the third party defendant, Lloyd C. Baston, moves the court to direct the jury to return a verdict in his favor, but same is, by the court, overruled. Thereafter the third party defendant presented his evidence and at the conclusion of all the evidence, the plaintiffs move the court to dismiss their cause of action against defendant Eldon A. Davis, which is granted and defendant Eldon A. Davis moves to dismiss his cause of action in the cross-complaint against the third party defendant, Lloyd Baston, which is granted.

Whereupon the plaintiffs move the court to direct the jury to return a verdict in their favor against the

defendant, Toyee G. Davis, in the amount of $5,175 and the court being sufficiently advised in the premises grants said motion, and thereupon the defendant, Toyee G. Davis, moves the court to direct the jury to return a verdict in his favor against the third party defendant, Lloyd C. Baston, in the amount of $5,175, and the court being sufficiently advised in the premises grants said motion and at the direction of the court the jury returns from the box . . ." the above verdicts.

Baston alone has appealed, and for reversal says: "Court erred in refusing to direct verdict for Baston at the conclusion of Davis' testimony; court erred in directing verdict for the plaintiff (Davis) against Baston."

There appears to be little if any dispute as to material facts. We have concluded in the circumstances that the court was correct in holding that Baston was bound for the remaining unexpired term of the original lease of the Rileys to Davis from the time he took possession of the property under the written assignment of said lease from Davis to him. The evidence shows that he received, accepted, and kept in his possession this assignment lease and operated under it for 18 months, although it is conceded he did not sign this assigned lease. Davis testified: "I sold out — I sold the Davis Oil Company to Lloyd Baston, and I assigned him these leases, not only this lease here of Dr. Riley's but a lease on the bulk plant and a service station on the Smackover Highway, and two other service stations. . . . Mr. Baston mailed me this lease here and said I had failed to sign the assignment to him, Mr. Baston; and I sent it back to him, and he has had the lease all this time, and I haven't even had a copy of it."

The rule appears to be that where a person accepts an assignment of a lease he enters into a privity of estate with the original lessor, and becomes personally liable for the rents, (32 Am. Jur. 320, Sec. 374) and that liability continues despite the fact that the assignee abandons the premises, as Baston did here. Baston's

acceptance of the written assignment and performance under it, we hold, was sufficient to make him liable for the rents without regard to the statute of frauds, and that his abandonment of the property did not relieve him from a liability for the remainder of the term. The annotator in 70 A. L. R., page 1103, under the title, — Rent — Liability of Assignee of Lease, — uses this language: ''The abandonment of a leasehold by the assignee of the lessee, without any reassignment and without the consent of the lessor, does not relieve the assignee from liability to the lessor for rent accruing for the remainder of the term.'' In support of this rule a large number of cases are cited from many jurisdictions, among them that of *Chicago Attachment Co.* v. *Davis Sewing Machine Co.*, 25 N. E. 669, from the Supreme Court of Illinois. There that court held: ''Headnote 1. The assignment of a lease whose unexpired term is longer than a year is within the purview of Rev. St. Ill. c. 59, Sec. 2, which provides that no action shall be brought 'upon any contract for the sale of lands, tenements or hereditaments or any interest in them for a longer term than one year, unless such contract or some note or memorandum thereof be in writing.' 2. The fact that the assignee, by parol, of a lease takes possession of the demised property, pays rent for a time and is recognized by the lessor as his tenant, constitutes such an execution of the contract of assignment as takes it out of the statute of frauds. 3. The assignee of a lease who has abandoned possession without divesting himself of his title is liable for rent thereafter accruing under the lease. . . .'' In the body of the opinion the court said: ''The lessee is liable to the lessor both by virtue of privity of estate and privity of contract. We understand that the liability of the assignee to the lessor or reversioner is by reason of the privity of estate, which, by the assignment, has been transferred from the lessee to the assignee. The fact of actual possession is frequently of vital importance, as affording a link which, in connection with the further fact such possession is derived from the lessee, will

raise the presumption that there is privity of estate between the party in possession and the lessor, or even estop such party from denying such privity, but, after all, it is the privity of estate which imposes the liability. . . . So long as it continued to be owner of the lease estate, and retained the legal title thereto, and was entitled to immediate and actual possession, such legal title drew to it the constructive possession, and it was still assignee of the term, and responsible as such.''

We have concluded, however, that the court erred in refusing under appellant's objection to submit to the jury the fact question as to the reasonableness of the rental value of the property in question during the remaining years of the lease term and what amount of damages Davis would be entitled to recover under proper instructions. It was the duty of Davis to use all reasonable efforts to minimize the damages he sustained. The evidence failed to show what Davis did with the property from December 20 to the following May, when the property was re-let for $50 per month less than the $300 per month lease contract rental. We approved the following instruction, in a situation such as here, in *LaVasque v. Beeson,* 164 Ark. 95, 261 S. W. 49, ''The court further instructs the jury that it was the duty of the plaintiffs, when they learned that the contract had been breached, to use all reasonable efforts to minimize the damage which they may have sustained, and, if they failed to do so, the jury should take that into consideration in assessing the amount of damages sustained by the plaintiffs on account of said breach of contract.'' For the error indicated the judgment is reversed and the cause remanded.