# LAKE VILLAGE IMPLEMENT CO., INC. v. CROWELL COX

5-5834 478 S.W. 2d 36

Opinion delivered March 27, 1972

Clifton Bond and William H. Drew, for appellant.

James A. Ross and James A. Ross, Jr., for appellee.

JOHN A. FOGLEMAN, Justice. This is the second appeal in this case, which was commenced October 17, 1968, by appellant Lake Village Implement Co., Inc., to replevy certain farm equipment for harvesting silage crops in the possession of appellee Crowell Cox. We reversed a judgment in favor of appellee for possession of the equipment and for $2,000 on his counterclaim for damages for loss of a 95-acre crop of silage, loss on cattle he expected to feed the silage and a down payment on the equipment. We held that the loss on the cattle was too remote to constitute a proper element of damages and that appellee could not recover both possession and his down payment. See *Lake Village Implement Co. v. Cox*, 249 Ark. 733, 461 S.W. 2d 108. After remand, appellant amended its complaint to ask, in the alternative, for a recovery of the farm equipment and damages for detention, or for the balance due on the purchase price.

Appellee also amended his pleadings to allege a repudiation and breach of a contract to sell and deliver possession of the equipment and prayed for recovery of $14,250 for loss of the silage crop, the down payment of $1,850 and $150 as the value of a four-wheel wagon, cylinder and hydraulic hose on which the equipment was mounted when repossessed and delivered to appellant.

Appellant, the seller of the goods, relies upon four points for reversal which are, in essence, failure of the circuit judge to direct a verdict in its favor for possession of the equipment, failure to direct a verdict in its favor contending that appellee's counterclaim was based upon an alleged contract not to be performed within one year and not signed by appellant and thus within the statute of frauds, and that the evidence of this alleged contract was contrary to the final written expression of the agreement in violation of Ark. Stat. Ann. § 85-2-202 (Add. 1961), and failure to require appellee to elect whether he sought recovery of the fair rental value of the equipment under the replevin statutes or to rescind the contract and recover his down payment and other items of damage recited in Ark. Stat. Ann. § 85-2-711 (Add. 1961).

There was considerable conflict in the testimony as to the transaction between the parties. Appellant did sell appellee the farm equipment in question for cutting silage. The purchase price was $5,850. Most of the dealings on behalf of appellant were conducted by a salesman named George Kirkland. Appellee contends that the contract was evidenced by a retail purchase order prepared by Kirkland and signed by appellee. That document, dated August 10, 1968, described the equipment, listed the total price as $5,850, with cash on delivery $1,850, and the balance as "$4,000 to be financed." On the other hand, appellant's owner and manager testified that he disapproved this contract because of the statement that the balance was to be financed and that Cox later came to appellant's place of business and told Kirkland to order the equipment, saying that it would be paid for on delivery. The equipment was ordered after appellee's check for $1,850, dated August 10, 1968, as down payment had been first rejected by the bank and then paid on August 23. Kirkland testified that the agreement evidenced by the purchase order meant that Cox

was to arrange for financing the balance of the purchase price and that, since the equipment was specialized, appellant would not order it until financing was arranged. It was for that reason, said Kirkland, that he accompanied or assisted Cox in attempting to obtain loans to pay the balance. He claims that when these efforts were unavailing, he offered to refund the down payment, so Cox could buy the equipment elsewhere, whereupon Cox told him to order the equipment, assuring him that the balance of the purchase price would be paid in cash upon delivery. The equipment was ordered between the first and fifth of September, and delivered to the Cox farm before September 15. Kirkland said that he made an unsuccessful attempt to collect the balance from Cox two days later and when several other such attempts failed, he obtained a title retaining note dated September 17, 1968, and three postdated checks for the balance some 10 or 12 days after the equipment was delivered. He explained that Cox was in a hurry, so the note was not completely filled out, but that the amount and due date were filled in when Cox signed it and a partially completed financing statement. According to Kirkland, the checks were dated so that they would clear after a cattle auction then scheduled. The checks were dated September 24, September 30 and October 15, 1968. Festinger, the owner and manager of appellant, said that payment was refused on the first two of these checks, and that he sent Kirkland out to see Cox. Kirkland testified that his demand for possession of the equipment then made was refused, and the equipment was thereafter replevied.

On the other hand, appellee Cox testified that when he went to purchase the equipment, he told Kirkland he had a silage crop and needed the equipment to harvest it, that he signed the financing statement the same day he ordered the equipment and that the equipment had been delivered when, at Kirkland's request, the two went to various banks to obtain financing on the balance of the purchase price, which he said he had agreed to pay in two equal annual installments. Cox said that the equipment had remained unused for about three weeks when Kirkland called on him just as he was preparing to

harvest the silage crop and asked that the equipment be returned to the dealer's lot during an inspection so there would be no inventory shortage due to the failure to obtain financing. Cox added that when he refused, Kirkland brought a $4,000 note which Cox signed and then Kirkland returned about three days later and obtained Cox's signature on the three postdated checks, as security, even though Cox told him there was no money in the bank to cover them. Cox denied telling Kirkland that he would pay the checks after he sold some cattle at a sale, and said that he signed them upon the agreement that they would not be cashed. He said that the equipment had been used only two hours when replevied on October 17, 1968.

We find no reversible error in the circuit court's failure to direct a verdict in favor of appellant for possession of the equipment. It had been in appellant's possession since the sheriff took it under the writ of replevin. Appellee, on the second trial, did not seek to recover possession, but claimed that appellant had repudiated and breached its contract by repossessing the equipment when he was not in default. There was at least a question of fact as to appellant's entitlement to possession, but appellee is certainly in no position to claim any right to possession of the property after having elected to rescind the contract.

The contract was not within the statute of frauds, regardless of which version is accepted because the equipment had been delivered to, received and accepted by appellee, who had paid part of the purchase price. It was fully performed by appellant and capable of full performance within one year, except for the payment of the purchase price. It must appear from the terms of the contract that it was not to be performed within one year in order to bring it within the operation of the statute. *Johnson* v. *Cheek*, 163 Ark. 176, 259 S. W. 368. See also, Ark. Stat. Ann. § 85-2-202. We have held that the statute does not apply to contracts which may be completely performed on one side when nothing remains to be done during a period longer than one year, except

for the payment of compensation. *Manufacturer's Furniture Co. v. Read,* 172 Ark. 642, 290 S.W. 353; *Reed Oil Co. v. Cain,* 169 Ark. 309, 275 S.W. 333. While in these cases, the full performance was by the party seeking to recover the consideration for the contract, the weight of authority seems to be that the contract is taken out of the operation of the statute when there has been, or could be, full performance on the part of the other party. 37 C.J.S. 560, Frauds, Statute of § 50; 37 C.J.S. 774, Frauds, Statute of § 254. This seems to us to be the better rule, at least in cases involving the sale of goods.

We find no merit in appellant's contention that it should have been granted a directed verdict because the testimony on behalf of appellee was prohibited by § 85-2-202 as a contradiction of the financing statement, title retaining note and postdated checks signed by appellee. The section of the UCC relied upon by appellant bars evidence of a prior or contemporaneous oral agreement to contradict terms with respect to which confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement. Of course, Cox stoutly denies that these instruments were intended as the final expression of the agreement of the parties, but says that the incomplete note and financing statement and postdated checks were executed only for the purpose of preventing embarrassment to appellant on inspection of its inventory because of its failure to get any lending institution to finance the deferred payments. Furthermore, § 85-2-202 is intended only to exclude parol testimony under the circumstances stated, but we find no objection to the testimony, except for one made to Cox's statement that Kirkland agreed not to cash the checks.

As we understand appellee's amendment to his pleadings filed after remand, he elected to rescind the contract and sought a recovery of damages which would not otherwise have been allowable. The evidence introduced and offered by appellee shows that he was pursuing this remedy. If this, in itself, did not constitute an election by appellee, his testimony that he was asking for damages for repudiation and breach of contract and not seeking

to recover the equipment certainly did. We find no reversible error on direct appeal, but do find such error on cross-appeal.

Appellee contends that the court erred in refusing to permit him to introduce evidence of his damages by reason of loss of his silage crop. Not only was there Cox's testimony about his telling Kirkland of his immediate need for the equipment, it was admitted that it was "special order" machinery. Cox's son testified that the equipment was especially adapted for getting the silage into his father's upright silo. Kirkland said that it could not be delivered in less than 10 days after it was ordered, unless the purchaser went to one of the manufacturer's branches and hauled it on his own truck. Harvesting had just begun when the equipment was repossessed and, according to Cox, could have been completed in 12 to 15 days. He said that it was essential that the process be completed within a period of two or three weeks. He testified that the crop was lost for want of harvesting equipment and that there was no other equipment in the area with which the crop could have been harvested and placed in his upright silo. Another farm equipment dealer testified that no one in the area stocked silage equipment in 1968. The son said that efforts to cut the silage for hay failed because of the size of the plants.

Without reviewing the evidence introduced and proffered in further detail, there was evidence from which the jury might have found that: appellant was aware of appellee's silage crops and the necessity for their expeditious harvesting; the equipment was especially adapted to that purpose; there was no other such equipment available in the area for lease or purchase in time to complete the harvest; the fair net value of the crop was $10 per ton and 1,425 tons were ready for harvest. If the jury found that appellant had repudiated the contract between the parties then appellee was entitled to cancel it and recover his purchase price and incidental and consequential damages. Ark. Stat. Ann. §§ 85-2-711, 713. Consequential damages would include loss resulting from the particular needs of which the seller at the time of contracting had reason to know and which could not

reasonably be prevented by cover or otherwise. We think the evidence offered was sufficient to meet UCC standards. Ark. Stat. Ann. § 85-2-715, Committee Comment 4; Ark. Stat. Ann. § 85-1-106 (Add. 1961). It probably would be a different matter if the crop had not been virtually ready for harvest at the time of the purchase and the measure of damages as to the value of the crop so easily susceptible of proof.

Appellant argues that appellee could not recover these damages because he made no effort to obtain other equipment and he did not execute a cross bond when the property was replevied. Under the UCC, failure to "cover" is not a bar to recovery of consequential damages unless the loss could have reasonably been prevented by cover or otherwise. Ark. Stat. Ann. §§ 85-2-712 (3), 85-2-715 (2) (a). We have already stated that there were circumstances from which it might have been found that other such equipment would have been unavailable in time to prevent the loss. The failure to make redelivery bond is another matter. It appears that the language of the code recognizes the doctrine of avoidable consequences, i.e., that one cannot recover damages flowing from consequences that he might reasonably have avoided. We have recognized and applied this doctrine in many types of cases, among which are actions for breach of contract. *Gibson* v. *Lee Wilson & Co.*, 211 Ark. 300, 200 S.W. 2d 497; *School District No. 65* v. *Wright*, 184 Ark. 405, 42 S.W. 2d 555. Under this doctrine, one is required only to take such steps as may be taken at small expense or with reasonable exertion, and where the expense is so large as to make the requirement impracticable, the doctrine does not apply. *Curtner* v. *Bank of Jonesboro*, 175 Ark. 539, 299 S.W. 994; *Childress* v. *Tyson*, 200 Ark. 1129, 143 S.W. 2d 45. Reasonable diligence and ordinary care are all that is required. 22 Am. Jur. 53, Damages § 32. A lack of sufficient funds will usually excuse an effort to minimize damages. *Valencia* v. *Shell Oil Co.*, 23 Cal. 2d 840, 147 P. 2d 558 (1944); *Gray* v. *American Surety Co. of New York*, 129 Cal. App. 2d 471, 277 P. 2d 436 (1954); *Shellhammer* v. *Caruthers*, 99 S.W. 2d 1054 (Tex. Civ. App. 1936). See Annot. 81 A.L.R. 282.

Our statute does permit a defendant in a replevin suit to retain possession of the property by executing a bond with sufficient sureties. Ark. Stat. Ann. § 34-2109 (Repl. 1962). In this case, that bond must have been double the value of the property at the time. In the absence of a hearing under Ark. Stat. Ann. § 34-2110 (Repl. 1962), presumably this would have been $11,700, double the value stated in plaintiff's affidavit for replevin. The evidence clearly shows that banks were not willing to extend credit on appellee's note for the purchase price balance. Payment was being refused on appellee's checks. Appellee testified that he was compelled to sell his cattle immediately because of the loss of the silage crop. There is a strong indication that appellee would have had financial difficulty in making the bond and no evidence to the contrary. There is also an indication that he was ill at the time the property was repossessed. There was no absolute duty resting upon appellee to make a bond in order to preserve his claim. *Commercial Credit Corp.* v. *Mackay,* 221 Ark. 226, 252 S.W. 2d 819. If Cox was financially unable to procure a bond with sufficient surety, the law would not require him to lose his rights to damages by not doing so. *W. B. Moses and Sons* v. *Lockwood,* 295 F. 936, 33 A.L.R. 1467 D. C. Cir. 1924); *Hoff* v. *Lester,* 25 Wash. 2d 86, 168 P. 2d 409, 164 A.L.R. 751 (1946). See also, Annot. 33 A.L.R. 1479. In this connection all relevant and material facts should be considered, among which are the expense involved, appellee's financial ability, the relation between the costs and the damages claimed, and the amount of time reasonably estimated to be required before final judgment would be entered. *Hoff* v. *Lester,* supra. It must be established by proof that the claimant seeking damages was financially able to execute the bond, before the doctrine will apply. *Dale* v. *Peden,* 252 S.W. 2d 687 (Ky. Ct. App. 1952); *Hoff* v. *Lester,* supra. To say the least, the question whether Cox used all reasonable efforts to minimize his damages was one for a jury. *Baston* v. *Davis,* 229 Ark. 666, 318 S.W. 2d 837.

Since we find no reversible error on cross-appeal, normal disposition of the case would require remand for a new trial in spite of our finding that there was no

error in the judgment on direct appeal and the fact that neither party complains of the $150 in damages allowed for Cox's wagon and equipment. We cannot affirm the judgment on appeal and remand the case for a trial on the issue of damages for crop loss only, as prayed by appellee. This is because the jury verdict, even though directed, is an entity which we cannot sunder. *Manzo* v. *Boulet,* 220 Ark. 106, 246 S.W. 2d 126. Consequently, the judgment must be reversed and the cause remanded for a new trial, unless appellee elects to file a waiver of his cross-appeal within 17 days.