BARBARA F. HERMAN, Plaintiff-Appellee, *v.* FIRST FARMERS STATE BANK OF MINIER, Defendant-Appellant.

Third District   No. 79-7

Opinion filed July 6, 1979.—Rehearing denied August 2, 1979.

Kuhfuss & Kuhfuss, of Pekin, for appellant.

Swain, Johnson & Gard, of Peoria, for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

The sole question presented on this appeal is whether plaintiff Barbara F. Herman, was a "buyer in the ordinary course of business" under section 9—307 of our Uniform Commercial Code (Ill. Rev. Stat. 1977, ch. 26, par. 9—307). Following a bench trial the Circuit Court of Tazewell County held that plaintiff was such a "buyer" and entered a $2,200 judgment for her. We affirm.

The facts of this case are not in dispute. At all relevant times since March 13, 1974, defendant, First Farmers State Bank of Minier, had a perfected security interest in the inventory of Newell Soil Supplies, Inc., a company engaged in the retail business of selling and applying chemicals and fertilizers used by farmers. The security agreement between defendant and Newell allowed Newell to sell the inventory and gave defendant a security interest in the proceeds of any such sale. On February 22, 1978, plaintiff, through her tenant, contracted to buy 40,000 pounds of 28—0—0 liquid nitrogen solution from Newell. Plaintiff paid Newell the full purchase price of $2,200, and the solution was to be delivered and applied at a later, unspecified date. This arrangement was

customary in the business, and plaintiff had purchased solution from Newell on the same basis in other years.

On April 14, 1978, prior to delivery of the solution to plaintiff, Newell defaulted, and defendant took possession of Newell's inventory, which it later sold. At the time of default Newell had over 500 tons of 28—0—0 solution in stock. Plaintiff never received the 40,000 pounds of solution she ordered, and she brought this action against defendant to recover the $2,200 she paid to Newell.

■■ Article 9 of our Uniform Commercial Code establishes a priority system for determining the rights of parties who claim competing interests in secured property. (Introductory Comment, Ill. Ann. Stat., ch. 26, art. 9 (Smith-Hurd 1977).) As a general rule, the holder of a perfected security interest has an interest in the secured property, and the proceeds from the sale thereof, which is superior to the interests of unsecured creditors of the debtor and subsequent purchasers of the secured property.

> "§9—201. General Validity of Security Agreement.
>
> Except as otherwise provided by this Act a security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors." (Ill. Rev. Stat. 1977, ch. 26, par. 9—201.)

However, the principle exception to this general rule is found in section 9—307(1), which provides:

> "§9—307. Protection of Buyers of Goods.
>
> (1) A buyer in ordinary course of business (subsection (9) of Section 1—201) other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence." (Ill. Rev. Stat. 1977, ch. 26, par. 9—307(1).)

The definitional provision of the Code states:

> " 'Buyer in ordinary course of business' means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker. * * *." Ill. Rev. Stat. 1977, ch. 26, par. 1—201(9).

Plaintiff in the instant case contends she is a "buyer in the ordinary course of business" and, therefore, is entitled to recover from defendant the $2,200 she paid Newell for the nitrogen solution. Defendant, on the contrary, argues that plaintiff is not a "buyer" under section 9—307(1), but an unsecured creditor of Newell's whose interest in the secured property is inferior to that of defendant. In support of this argument defendant

relies on the passage-of-title provisions under article 2 of the Uniform Commercial Code, particularly section 2—401(2)(b), which provides that, if a contract for the sale of goods requires delivery by the seller, title to the goods does not pass to the buyer until the delivery has been made. (Ill. Rev. Stat. 1977, ch. 26, par. 2—401(2)(b).) Thus, the question before us is whether plaintiff is a "buyer in the ordinary course of business" under section 9—307 even though she never actually received the nitrogen solution or title to it.

Although this is a case of first impression in Illinois, plaintiff's argument that she is a "buyer" under section 9—307 is supported by decisions of other State courts. Both *Chrysler Credit Corp. v. Sharp* (1968), 56 Misc. 2d 261, 288 N.Y.S.2d 525, and *Rex Financial Corp. v. Mobil America Corp.* (1978), 119 Ariz. 176, 580 P.2d 8, involved disputes between a retail lender who had financed the buyer's purchase of secured goods and the seller's financer who held a perfected security interest in the seller's inventory. In each case the court held the purchaser was a "buyer in the ordinary course of business" under section 9—307, notwithstanding the fact he had not received delivery of the goods prior to the seller's default. Defendant's claim in this case, that passage-of-title rules under article 2 should govern the conflict, was specifically rejected by both courts. In *Chrysler* the court stated:

> "This Court is inclined to feel that while title questions may be of significance in determining many issues under the UCC, the theory of the act and its relation to the problem relegates the issue of title in this case to a subordinate position."

> "Obligations and remedies are not determined by the location of the title but rather on function, compliance with statutory requirements and the nature of the transaction." (288 N.Y.S.2d 525, 529, 532.)

The court in *Rex Financial* concurred in the *Chrysler* reasoning:

> "We disagree with appellant and agree fully with the philosophy expressed by the *Chrysler* court that a good faith purchaser who signs such a purchase money security agreement should be considered a buyer in the ordinary course 'without regard to the technicalities of when title is to pass pursuant to collateral oral agreements or as to time of delivery * * *.' 288 N.Y.S.2d at 534." 119 Ariz. 176, 178, 580 P.2d 8, 10.

We believe the *Chrysler* and *Rex Financial* reasoning should be applied to the case at bar. The Comments to section 9—101 of our Code state:

> "Rights, obligations and remedies under the Article do not depend on the location of title." (Comments, Ill. Ann. Stat., ch. 26, par.

9—101 (Smith-Hurd 1977); also, Annot., 87 A.L.R.3d 11, §2(b) (1978).)

The purpose of section 9—307 is to protect the "buyer in the ordinary course of business," and the Code is to be "liberally construed and applied to promote its underlying purposes and policies." (Ill. Rev. Stat. 1977, ch. 26, par. 1—102(1).) Whether a party is a "buyer" under section 9—307 is a question of fact for the trial court, and that court's determination will not be disturbed unless it is against the manifest weight of the evidence. (*American National Bank & Trust Co. v. MAR—K—Z Motors & Leasing Co.* (1974), 57 Ill. 2d 29, 309 N.E.2d 567.) The trial court's determination in this case is justified by the evidence.

We do not think the technical passage-of-title rules under article 2 should be applied to defeat the plaintiff's claim in this case. Rather, we believe the focus in a case such as this should be on the "ordinary course of business" requirement of section 9—307. As 1 Anderson, Uniform Commercial Code §1—201:25 (2d ed. 1970) suggests:

> "Whether the buyer is a buyer in ordinary course is not affected by whether there has been a completed sale or merely the making of the contract to sell, since the fact that title has not yet been transferred as between the dealer and the purchaser does not prevent the latter from being regarded as a buyer in the ordinary course of business, insofar as the secured creditor of the dealer is concerned, where the transaction between the dealer and the purchaser is ordinary or typical in the trade."

The transaction between plaintiff and Newell was customary in the business, and plaintiff had purchased solution from Newell on the same basis in earlier years. Plaintiff paid the full purchase price for the solution and justifiably expected delivery as in past years. Under article 2, "Buyer" is defined as "a person who buys or *contracts to buy goods.*" (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 26, par. 2—103(1)(a).) There is no question that plaintiff in the instant case contracted to buy the liquid nitrogen solution from Newell. Plaintiff was a typical buyer in an ordinary business transaction with Newell, and her interests must be protected under section 9—307(1).

Defendant's attempts to distinguish *Chrysler* and *Rex Financial* are without merit. Defendant argues that the purchased goods in those cases were specific ones, which had been set aside or "identified" to the contract under section 2—401 so as to complete the sale and pass title to the buyer. (See Ill. Rev. Stat. 1977, ch. 26, par. 2—401.) However, we find nothing in either of those opinions to suggest that the courts based their decisions on section 2—401 or any of the other provisions of article 2 relating to

passage of title and consummation of sales. In fact, as noted above, such an argument was specifically rejected in both cases.

Defendant's reliance on *Troy Lumber Co. v. Williams* (1971), 124 Ga. App. 636, 185 S.E.2d 580, is also misplaced. In *Troy*, the plaintiff did not purchase or contract to purchase the secured goods, but merely made a $600 downpayment on a "proposal" to purchase an unspecified mobile home. Moreover, the plaintiff there rescinded his contract with the dealer by demanding return of the down payment and elected to become a lien creditor of the dealer. The court, in response to plaintiff's claim that he was a buyer under section 9—307(1), stated:

> "This would be a valid argument if the plaintiffs were in fact buyers, i.e. if they were either attempting to enforce the contract of sale or defending their right to free possession of the property after having performed under the contract. However, the plaintiffs have, in effect, rescinded this contract by demanding refund of their down payment." (124 Ga. App. 636, 637-38; 185 S.E.2d 580, 582. See also Annot., 87 A.L.R.3d 11, §2(a) (1978).)

In the instant case plaintiff fully performed under her contract with Newell and is seeking the only contractual remedy now available to her in light of defendant's seizure and sale of Newell's stock. We believe that plaintiff in the case at bar would be able to recover even under the rule of *Troy*.

Finally, defendant contends that a holding in favor of plaintiff would make the entire concept of security on inventory unworkable, placing on any inventory security holder the impossible burden of accounting to numerous unknown creditors of the dealer who had made payments on account, but never received their goods. This contention is without merit. The same argument was raised in both *Chrysler* and *Rex Financial*, and the courts firmly responded:

> "If there is a usage of trade which exposes an entruster on floor plan to certain risks, these are risks against which he can guard by audits and accounting procedures or he can refuse to knowingly expose himself to the risk with the particular dealer. To fail to place the exposure of such risk with the entruster in such situation would make it impossible for retail finance companies to do business with any dealer unless the entruster were directly a participant. To hold otherwise, would expose the retail financer to a double loss as against at most a partial loss for both." 56 Misc. 2d 261, ___, 288 N.Y.S.2d 525, 534.

> "If this result exposes an inventory financer to certain risks, they are risks which he is in a better position to guard against than the retail financer." (119 Ariz. 176, 178, 580 P.2d 8, 10.)

We fully agree with the reasoning of these courts. We believe that the

risks involved in situations such as that at bar should be placed on the inventory financer, not only because it is better able to guard against those risks than the unwary buyer or the retail financer, but also because a contrary rule would inequitably allow the inventory financer a double recovery.

■■ We hold that plaintiff is a "buyer in the ordinary course of business" under section 9—307(1), who is entitled to recover the $2,200 she paid to Newell. The judgment of the Circuit Court of Tazewell County is affirmed.

Affirmed.

STOUDER, P. J., and SCOTT, J., concur.