487 A.2d 953

BIG KNOB VOLUNTEER FIRE COMPANY, Appellant,

v.

LOWE & MOYER GARAGE, INC., and Hamerly
Custom Productions, Inc.

Superior Court of Pennsylvania.

Argued March 21, 1984.

Filed Jan. 23, 1985.

---

258

Robert W. Lewis, Jr., Ambridge, for appellant.

Thomas R. Elliott, Jr., Easton, for appellee.

Before SPAETH, President Judge, and BECK and TAMILIA, JJ.

SPAETH, President Judge:

■ This is an action in replevin for possession of a fire truck. Appellant, plaintiff below, claims the better right to possess the truck under Section 2403(b) of the Uniform Commercial Code, 13 Pa.C.S. § 2403(b), which provides that a merchant entrusted with possession of goods has "power to transfer all rights of the entruster to a buyer in ordinary course of business."[1] The trial court held that appellant was not a buyer in ordinary course of business because "no actual sale to [appellant] occurred." Slip op. of trial ct. at 5. We hold that for one to become a buyer in ordinary course of business, it is not necessary that a sale occur, and that on the facts of this case, appellant became a buyer in ordinary course of business when its name was placed on the fire truck, thereby identifying the truck to the contract

1. Appellant's brief does not conform to Pa.R.A.P. 2111 *et seq.*, which prescribe the form and content of briefs. While this failure is inexcusable, we have concluded that it is not so egregious that we should suppress the brief or quash the appeal. Pa.R.A.P. 2101. *But see Commonwealth v. Stoppie,* 337 Pa.Super. 235, 486 A.2d 994 (1984).

The Act of Nov. 1, 1979, P.L. 255, No. 86, 13 Pa.C.S. § 1101 *et seq.,* transferred the former provisions of the Act of Apr. 6, 1953, P.L. 3, No. 1, known as the "Uniform Commercial Code," as reenacted, amended, and revised by the Act of Oct. 2, 1959, P.L. 1023, No. 426, 12A P.S. § 1–101 *et seq.,* to Title 13 of the Pennsylvania Consolidated Statutes. Because the transfer did not effect a substantive change in the law, Act of Nov. 1, 1979, P.L. 255, No. 86, § 7, we shall cite to the Code by section only and in the form used in the 1979 Act (*e.g.,* § 2716(c)).

for its sale. This conclusion, however, is not dispositive. Section 2716(c) of the Uniform Commercial Code, 13 Pa.C.S. § 2716(c), provides that "[t]he buyer has a right of replevin for goods identified to the contract if ... the circumstances reasonably indicate" that an effort to cover the goods would have been unavailing. The trial court made no finding on whether the circumstances here did so indicate. We therefore reverse and remand for further proceedings.[2]

On March 26, 1979, appellant, the Big Knob Volunteer Fire Department, agreed to purchase a fire truck from Hamerly Custom Productions, Inc., which was in the business of assembling various component parts into fire trucks. Two days later, the Volunteer Fire Department paid Hamerly $10,000 toward the purchase price of the fire truck. After a modification in the specifications, which increased the purchase price to $51,836, the Volunteer Fire Department paid Hamerly $38,000 more toward the purchase price.

The contract for the fire truck provided that Hamerly would order the chassis for the truck, and would complete and deliver the truck within 20 to 70 days after receiving the chassis. The contract also provided:

The title [to the fire truck] does not pass to Buyer until the purchase price is paid in full. The Buyer grants Seller a security interest in the fire apparatus [truck] until paid in full. Seller retains all rights and remedies afforded under the uniform commercial code and its pertinent sections.

Complaint, Exhibit A.

On April 5, 1979, Hamerly ordered the chassis from appellee, Lowe & Moyer Garage, Inc., which in turn ordered it from the International Harvester Company. In September 1979 International Harvester delivered the chassis to Lowe & Moyer, reserving a security interest in the chassis, and

2. This action was commenced by complaint and a motion for writ of seizure. On appellant's filing a replevin bond in twice the amount of the value of the fire truck, a writ of seizure issued, and we understand that appellant has since had possession of the truck under the bond.

obtaining a note in its favor for the purchase price. This note was assigned to International Harvester Credit Corporation, as Lowe & Moyer's "floorplanner," and reassigned to the First National Bank of Allentown.[3] On October 17, 1979, Lowe & Moyer delivered the chassis to Hamerly.

Hamerly began work on transforming the chassis into a fire truck, and at some point, painted the Volunteer Fire Department's name on the cab. However, Hamerly neither paid Lowe & Moyer for the chassis, nor did it complete and deliver the truck to the Volunteer Fire Department, with the result that both Lowe & Moyer and the Volunteer Fire Department sued Hamerly. In April 1980 Hamerly surrendered the truck to Lowe & Moyer, whereupon Lowe & Moyer discontinued its action against Hamerly. On its action against Hamerly, for specific performance, the Volunteer Fire Department obtained a default judgment. It then brought the present action for replevin of the fire truck against Lowe & Moyer and Hamerly. The trial court found in favor of Lowe & Moyer, for the chassis or its value, and the Volunteer Fire Department took this appeal.[4]

The Uniform Commercial Code preserves a buyer's right of replevin:

> The buyer has a right of replevin for goods identified to the contract if after reasonable effort he is unable to effect cover for such goods or the circumstances reasonably indicate that such effort will be unavailing, ....
>
> § 2716(c).

It is clear that the Volunteer Fire Department was a "buyer" of the fire truck, for the Code defines a "buyer" as "[a] person who buys or *contracts to buy* goods."

---

3. The trial court granted the bank, as assignee, leave to intervene and file a counterclaim, but made no determination on the bank's claim. Since no exceptions were taken on the bank's behalf, its claim is not before us.

4. Hamerly did not respond to service of process and entered no appearance in the action, and the judgment entered is in favor of only Lowe & Moyer. Thus, while the paper books designate both Hamerly and Lowe & Moyer as appellees, in fact only Lowe & Moyer is an appellee.

§ 2103(a) (emphasis added). It is also clear that the truck was "identified to the contract." Identification occurred when Hamerly painted the Volunteer Fire Department's name on the cab. § 2501(a)(2). Two issues remain, however. The first issue is whether the Volunteer Fire Department, as plaintiff in replevin, sustained its burden to prove that it has a better right to possess the fire truck than Lowe & Moyer. *Robinson v. Tool-O-Matic, Inc.,* 216 Pa.Super. 258, 263 A.2d 914 (1970). The second issue is, if the Volunteer Fire Department did prove its better right to possession, did it also prove, either that after reasonable effort it was unable to effect cover for the fire truck, or that the circumstances reasonably indicated that such effort would be unavailing.

–1–

The Volunteer Fire Department argues that it proved its better right to possess the fire truck under § 2403(b) of the Code, which provides that a merchant entrusted with possession of goods has "power to transfer all rights of the entruster to a buyer in ordinary course of business." In the Volunteer Fire Department's view, Lowe & Moyer entrusted possession of the chassis for the fire truck to Hamerly, which thereby gained the power to transfer all of Lowe & Moyer's rights in the chassis to the Volunteer Fire Department as "a buyer in ordinary course of business."

The Code defines a buyer in ordinary course as

[a] person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind. . . .

§ 1201.

The trial court held that the Volunteer Fire Department was not a buyer in ordinary course because there was no sale to it. Relying on the definition of "sale" as "the passing of title from the seller to the buyer for a price," § 2106(a), the trial court held that "[n]either title to the

truck passed, nor was delivery made to plaintiff." Slip op. of trial ct. at 3.

The point at which a person becomes a buyer in ordinary course is subject to considerable controversy because the Code does not specify the moment at which the status is conferred. The controversy arises in the context of both § 9307(a) and § 2403(b) of the Code.

The commentators are divided. Jackson and Peters, Quest for Uncertainty: A Proposal for Flexible Resolution of Inherent Conflicts between Article 2 and Article 9 of the Uniform Commercial Code, 87 Yale L.J. 907, 952 and n. 163 (1978) (passing of title is not necessary to be a buyer in ordinary course for purposes of § 2403); Smith, Title and Right to Possession Under the Uniform Commercial Code, 10 B.C. Indus. & Com.L.Rev. 39, 61 (1968) (possession by buyer is required to prevail under § 2403); The Buyer-Secured Party Conflict and Section 9–307(1) of the UCC: Identifying when a Buyer Qualifies for Protection as a Buyer in Ordinary Course, 50 Fordham L.Rev. 657, 686 n. 246 (1982) (identification of goods to the contract should be point at which a person becomes a buyer in ordinary course under § 2403).

The cases are also divided. Cases denying recovery to a party on the ground that the party was not a buyer in ordinary course reason that a sale is required, § 1201; a sale requires transfer of title, § 2106(a); and a transfer of title occurs either when agreed upon by the parties or upon physical delivery, § 2401(2). Absent satisfaction of these criteria, the buyer will not prevail even though some or all of the purchase price has been paid. *See, e.g., Chrysler Corp. v. Adamatic, Inc.,* 59 Wis.2d 219, 208 N.W.2d 97 (1973). This was the reasoning of the trial court, which cited *Chrysler.* Slip op. of trial ct. at 4. This reasoning places the buyer who has paid in advance for goods not yet delivered in an extremely vulnerable position.

Emphasis upon a title-passing test means that *until* title passes, either according to the contract or through seller's delivery of the goods, the "executory buyer's" status

is in jeopardy. He is subject to the superior rights of an inventory secured party and runs the risk of being advised that the sale to him is in violation of the security agreement, so that he may never become a buyer in ordinary course of business.

Skilton, Buyer in Ordinary Course of Business Under Article 9 of the Uniform Commercial Code (and related matters), 1974 Wisc.L.Rev. 1, 18–19 (emphasis in original) (footnote omitted).

*See also* Gordon, The Prepaying Buyer: Second Class Citizenship Under the Uniform Commercial Code Article 2, 63 Nw.U.L.Rev. 565 (1968); Speidel, Advance Payments in Contracts for Sale of Manufactured Goods: A Look at the Uniform Commercial Code, 52 Cal.L.Rev. 281 (1964). The modern trend in contests between a buyer without possession and a secured creditor, typically the inventory financer, is to ignore or deemphasize the concept of "sale." Buyer-Secured Party Conflict, *supra*, at 680. Instead of focusing on passage of title (delivery), courts and commentators increasingly favor identification as the critical moment that determines when a buyer becomes a buyer in ordinary course. *See, e.g., In re Pennsylvania Conveyor Co.,* 31 B.R. 680 (Bankr.W.D.Pa.1982); *Holstein v. Greenwich Yacht Sales, Inc.,* 122 R.I. 211, 404 A.2d 842 (1979); Dolan, The Uniform Commercial Code and the Concept of Possession in the Marketing and Financing of Goods, 56 Tex.L. Rev. 1147 (1978); Buyer-Secured Party Conflict, *supra. But see Wilson v. M & W Gear,* 110 Ill.App.3d 538, 66 Ill.Dec. 244, 442 N.E.2d 670 (1982) (a person is a buyer in ordinary course when a person contracts to buy goods and those goods are in the dealer's inventory or being prepared for delivery). The Code's official comment that identification should have "limited effect," § 2501 comment 2, is set to one side by proponents of this view, who point to several factors to reach their obviously pro-buyer conclusion.

One factor is that the Code specifically provides that it should be "liberally construed and applied to promote its

underlying purposes and policies." § 1102(a). One of the fundamental purposes of the Code, evident in such a provision as § 9307, is to protect the innocent buyer. *Cf.* J. White and R. Summers, Handbook of the Law Under the Uniform Commercial Code 1070 (2d ed. 1980) (conceding that the policy of § 9307 would seem to cover an innocent purchaser even when the security interest has not been created by the buyer's seller). Giving priority to the buyer over a secured party upon identification of goods to the contract furthers this purpose. Buyer-Secured Party Conflict, *supra,* at 883.

A second factor is that the Code expressly diminishes the importance of title in ascertaining rights in property, § 2505 comment 1, and analyses, such as that in *Chrysler Corp. v. Adamatic, Inc., supra,* are inconsistent with this approach. Skilton, *supra,* at 17–18.

A third factor is that the replevin section of the Code, § 2716(c), expressly requires identification but not delivery. "If a buyer has no replevin rights until title passes, as *Chrysler, [supra],* held, there is no need for the replevin section to mention identification, since identification must occur *before* title passes." Dolan, *supra,* at 1155 (emphasis in original).

A fourth factor is the comparison of § 9307(a) with one of its predecessors, The Uniform Trust Receipts Act § 9(2) (1933), which protected "a buyer in the ordinary course of trade," defined as a person "to whom goods are sold and *delivered* ...." *Id.* § 1 (emphasis added). The omission of "delivered" or "delivery" from the definition of a buyer in ordinary course of business in § 1201 has been interpreted as intentional. Buyer-Secured Party Conflict, *supra,* at 674. In this regard, it may be noted that the same omission is apparent in § 2403(b) when compared with its predecessor, § 25 of the Uniform Sales Act (1906), which required "delivery." The omission of the requirement of delivery in both §§ 2403(b) and 9307(a), which are different in origin,

strongly supports the view that the drafters intended to protect certain buyers even in the absence of delivery.

Finally, some courts have concluded that the secured party is better able to absorb the loss than the buyer. *See, e.g., Rex Financial Corp. v. Mobile America Corp.,* 119 Ariz. 176, 580 P.2d 8 (Ariz.Ct.App.1978); *Herman v. First Farmers State Bank of Minier,* 73 Ill.App.3d 475, 29 Ill. Dec. 787, 392 N.E.2d 344 (1979); *Chrysler Credit Corp. v. Sharp,* 56 Misc.2d 261, 288 N.Y.S.2d 525 (Sup.Ct.1968); *Holstein v. Greenwich Yacht Sales, Inc., supra.* In contests between a buyer and an owner who has entrusted the property to the buyer's seller, the argument is made that the buyer should be protected because the owner, by placing the goods in commerce, is responsible for involving the buyer's seller. *See, e.g., Coffman Truck Sales v. Sackley Cartage Co.,* 58 Ill.App.3d 68, 15 Ill.Dec. 554, 373 N.E.2d 1026 (1978); *Atwood Chevrolet-Olds, Inc. v. Aberdeen Municipal School District,* 431 So.2d 926 (Miss.1983).

 As a result of considering these several factors, courts have with increasing frequency held that passing of title (when agreed to or occurring upon delivery, § 2401(2)) is not essential to a person becoming a buyer in ordinary course of business. *See, e.g., Herman v. First Farmers State Bank of Minier, supra; Tanbro Fabrics Corp. v. Deering Milliken, Inc.,* 39 N.Y.2d 632, 350 N.E.2d 590, 385 N.Y.S.2d 260 (1976); *Holstein v. Greenwich Yacht Sales, Inc., supra. See also Rex Financial Corp. v. Mobile America Corp., supra; International Harvester Credit Corp. v. Associates Financial Services Co.,* 133 Ga.App. 488, 211 S.E.2d 430 (1974); *Chrysler Credit Corp. v. Sharp, supra.* We agree with these courts, and hold that identification rather than delivery is the point at which a person becomes a buyer in ordinary course of business. Since here the fire truck was identified to the contract, the Volunteer Fire Company did become a buyer in ordinary course of business. Upon entrusting the goods to Hamerly, which dealt in goods of that kind, Lowe & Moyer gave Hamerly

the power to transfer its rights to a buyer in ordinary course of business, and Hamerly exercised that power when it painted the Volunteer Fire Department's name on the cab of the fire truck, identifying the goods to the contract and making the Volunteer Fire Department a buyer in ordinary course of business. *Cf.* Buyer-Secured Party Conflict, *supra*, at 686 n. 246 (in rare cases where identification occurs prior to buyer taking possession, allowing buyer to prevail in entrusting situation justified by policy of § 2403(b) giving strong protection to innocent buyer who relies on seller's apparent authority). Thus, as to Lowe & Moyer, the Volunteer Fire Department has shown under § 2403(b) a better right to possess the fire truck.[5]

–2–

■ It remains to consider whether the Volunteer Fire Department also proved, either that after reasonable effort it was unable to effect cover for the fire truck, or that the

5. The Volunteer Fire Department also argues that it is entitled to the fire truck under § 9307(a) in that Hamerly, as a buyer in ordinary course, cut off the floorplanner's security interest and the Department as Hamerly's buyer took free of that interest. This argument is beside the point because the contest here is between the Volunteer Fire Department and Lowe & Moyer, not the floorplanner. The Volunteer Fire Department has only to establish that it had superior title to Lowe & Moyer, not to the whole world.

Lowe & Moyer counterclaimed and argues that it had a security interest by retaining the bill of origin on the chassis. Thus, the claim is that the reservation of the security interest gave Lowe & Moyer the right to retake possession, under § 9503, and upon repossession its security interest became perfected, § 9305. Brief for Appellee at 24. Lowe & Moyer argues that the Volunteer Fire Department is not a buyer in ordinary course who can take free of the security interest. However, we find that counsel for Lowe & Moyer conceded during trial that Lowe & Moyer had no security interest. N.T. 92. Thus, the contest here is between a buyer in ordinary course and an unsecured party in possession of the property. The exclusivity of § 9307(a) in situations in which §§ 2403 and 9307(a) may be arguably considered is consequently not at issue. Counsel's concession also negates any argument that § 9306 may apply.

Although § 2402(a) gives priority to a buyer over an unsecured party, the Volunteer Fire Department failed to raise this theory of recovery when before the trial court and therefore has waived it.

circumstances reasonably indicated that such effort would be unavailing. As we have discussed, such proof is required if a buyer is to have a right of replevin under § 2716(c) of the Code.

In his opinion, the trial judge made no finding regarding cover, resting his decision in favor of Lowe & Moyer on his conclusion that the Volunteer Fire Department was not a buyer in ordinary course of business—a conclusion with which we have just expressed our disagreement. Nevertheless, we should reach the same decision as the trial judge, albeit on different reasoning, if the Volunteer Fire Department failed to meet its burden of proof regarding cover. In its opinion sitting *en banc*—the opinion being written by the trial judge—the trial court not only concluded that the Volunteer Fire Department was not a buyer in ordinary course, but also stated that the Department "failed to show cover was, in fact, unavailable." Slip op. of trial ct., *en banc*, at 4. However, we are uncertain how to interpret this statement, which the trial court did not elaborate on. Section 2716(c) of the Code is in the disjunctive: the buyer must prove, either that "after reasonable effort he is unable to effect cover," or that "the circumstances reasonably indicate that such effort will be unavailing." The trial court's statement is not clearly addressed to either of these alternatives.

■ We are satisfied from our own examination of the record that the Volunteer Fire Department did not satisfy the first alternative, for it offered no proof that it had made any effort, much less a reasonable effort, to effect cover. *See* § 2712(a). However, with respect to the second alternative, we are unwilling to reach a conclusion, for to do so would require us to appraise the evidence, which we believe should initially be done by the trial court. We shall therefore remand for further proceedings; while the trial court may of course hear argument and receive briefs, it should not receive further evidence, for that would give the parties

a second chance to do what should have been done at trial. Incident to our remand, we offer the following observations in the hope that they may give some guidance to the parties in their arguments and the trial court in its decision on whether the circumstances did or did not reasonably indicate that an effort by the Volunteer Fire Department to cover the fire truck would have been unavailing.

To "cover" means to "mak[e] in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller." § 2712(a). In the context of § 2716(c), on the right of replevin, there is a dearth of case law on how to decide whether the circumstances reasonably indicated that a reasonable effort to obtain cover would have been unavailing. However, we may learn from cases that discuss the necessity to mitigate damages by covering as a prerequisite to obtaining consequential damages upon breach of a contract for sale of goods. § 2715(b)(1) (consequential damages available only when foreseeable losses "could not reasonably be prevented by cover or otherwise; ....."). *And see, Gerwin v. Southeastern Association of Seventh Day Adventists,* 14 Cal.App.3d 209, 92 Cal.Rptr. 111 (1971), where the court referred to the replevin provision in its discussion of the necessity to cover for purposes of obtaining consequential damages.

In some cases it will appear that the buyer could have reduced his consequential damages because equivalent goods could be easily found on the open market. In other cases, however, it will appear that cover was impossible because the goods were specially ordered or had qualities that could not be duplicated, at least not within the requisite period of time. *See Whitaker v. Farmhand, Inc.,* 173 Mont. 345, 567 P.2d 916 (1977). *See also Lake Village Implement Co. v. Cox,* 252 Ark. 224, 478 S.W.2d 36 (1972) (special order machinery needed to harvest crops unavailable in time to prevent loss). *Cf. Bos v. Dolajak,* 167 Mont. 1, 534 P.2d 1258 (1975).

It may also be pertinent in determining the necessity to cover to consider the expense of replacement and the financial capabilities of the buyer.

[O]ne is required only to take such steps as may be taken at small expense or with reasonable exertion, and where the expense is so large as to make the requirement [to cover] impracticable, the doctrine [of avoidable consequences] does not apply.

*Lake Village Implement Co. v. Cox,* 252 Ark. at 231, 478 S.W.2d at 42 (citations omitted).

*See also Gerwin v. Southeastern California Association of Seventh Day Adventists, supra* ("duty to mitigate does not require an injured party to take measures which are unreasonable or impractical or which require expenditures disproportionate to the loss sought to be avoided or which are beyond his financial means"); *Schatz Distributing Co. v. Olivetti Corp. of America,* 7 Kan.App.2d 676, 647 P.2d 820 (1982) (requirement to mitigate does not require subsequent sale and replacement at any price; loss would have been $10,000); *Whitaker v. Farmhand, Inc., supra* (plaintiffs did not have to cover where they did not have the financial capability to acquire other satisfactory devices). If the buyer has prepaid, these interrelated factors assume greater importance.

██ Here, it appears to us that, accepting as true all of the Volunteer Fire Department's uncontradicted evidence, one could find that the circumstances reasonably indicated that an effort to cover the fire truck would have been unavailing. *Cf.* § 2716, comment 3 (goods identified to contract subject to replevin when cover "reasonably unavailable").

The Volunteer Fire Department is a non-profit organization, the revenues of which are derived mainly from functions to raise money and direct solicitation of donations. N.T. 6, 42–43. After choosing the lowest bidder to supply the fire truck, the Department paid $48,000, in advance, on

the total purchase price of some $51,000. N.T. 7, 9. This prepayment resulted under the contract in a 5 percent discount on the price. N.T. 10. This evidence may indicate limited resources and an attempt to make the best use of those resources by reducing the total outlay for the fire truck.

The fire truck was a special-order vehicle, as appears from the contract, which lists the particular component parts required by the Volunteer Fire Department.[6] Lowe & Moyer states that one of the Volunteer Fire Department's witnesses, a Chief Mohrbacher, "demonstrated personal knowledge that there were other available sources for a truck meeting his specifications." Brief for Appellee at 15. In the testimony cited, the Chief stated that four bids to supply the truck were submitted. No evidence was presented as to the time or cost in obtaining a replacement truck from these other original bidders. Given the special features of the desired truck, it may be reasonable to infer that an equivalent vehicle was not carried in stock by the other bidders, or elsewhere.

Between the date the contract was signed and the delivery of the chassis to Hamerly, Hamerly periodically reassured the Volunteer Fire Department that the chassis would be in production soon. N.T. 14. After the chassis was delivered to Hamerly, the Department called Hamerly weekly to ascertain when the fire truck would be delivered. N.T. 17. Eventually the Department learned that no part of its payment had been forwarded to Lowe & Moyer, as supplier of the chassis, N.T. 15–16, 55–56, and that prepayment was unusual and Lowe & Moyer had not been aware that Hamerly had already been paid, N.T. 15–16. A year after the contract had been signed and about six months after delivery of the chassis to Hamerly, the Department learned that the truck was still incomplete on Hamerly's

6. The contract, which was appended to the complaint and admitted into evidence, N.T. 9, is over 40 pages long and specifies in detail the features of the fire truck to be delivered by Hamerly.

premises. N.T. 17. A week before obtaining a default judgment in its suit against Hamerly for specific performance, the Department was informed by Lowe & Moyer that it had acquired possession of the truck. N.T. 26–28. The Department then filed this action in replevin, and, after paying a premium of $1,036.72, to post a bond for twice the value of the truck, N.T. 34–36, obtained the still-unfinished truck from Lowe & Moyer in June 1980, less than two months after learning that Hamerly no longer had possession. In conjunction with the other evidence, these circumstances may have reasonably indicated that an effort to cover the fire truck would have been unavailing, at least without extraordinary expense, delay, the risk of loss of the money already paid Hamerly, and the risk that Hamerly would not be able to satisfy damages incurred in obtaining cover. *Cf. Tatum v. Richter*, 280 Md. 332, 373 A.2d 923 (1977) (buyer entitled to replevin where he paid $15,000 of $17,500 toward a specially-ordered car identified to the contract because buyer "unable to effect cover and there was no other way to protect himself against loss of his deposit").

As the tone of the foregoing discussion has no doubt indicated, if we knew that the trial court had accepted the Volunteer Fire Department's evidence as credible, we should consider ourselves able to conclude that the Department had satisfied the cover requirement, and, as a buyer in ordinary course of business, was entitled to possession of the fire truck. However, we do not know how the trial court regarded the evidence, and, moreover, we have its statement that "[p]laintiff has also failed to show cover was, in fact, unavailable." It may be that this statement reflects a view of the law regarding cover, rather than a view of the quality of the evidence, but we are not so sure of this as to consider ourselves entitled to act on that assumption.

Remanded for further proceedings consistent with this opinion. Jurisdiction is relinquished.